ELLIS, Judge.
In April, 1957, A. G. Miley, hereinafter referred to as the contractor, entered into a contract to build a home for the defendant William L. Petty, hereinafter referred to as owner. The contractor and owner became involved in a disagreement or dispute after certain work had been done under the contract by the contractor, which resulted in a settlement between the two, and which resulted in a mutual release of the contractor and the owner toward each other “of all obligations, duties, rights or interests that either may have as to each other in connection with or as a result of said building contract * * * ” and the owner also relieved and released The Great American Indemnity Company, bondsman of the contractor, “from any and all responsibility growing out of or in any way connected with the above described contract * * *” except it was agreed “that the responsibility of Alvin G. Miley, as contractor, and The Great American Indemnity Company continues on that portion of the work accomplished by him, viz.: foundation of slab, under ground plumbing and septic tank shall continue for a period of one year from date of installation. The said Alvin G. Miley warrants that all materials used or work done and completed under said contract have been fully paid for, that there are no building, materialmen or labor liens or privileges existing against said contract or the premises by virtue of the work done therein, and said parties hereby authorize and direct the recorder of mortgages, for the parish of East Baton Rouge, State of Louisiana to cancel and erase the inscription of the said building contract recorded aforesaid, except as stated above.” This release was entered into and sworn to and subscribed before a Notary Public on the 1st day of July 1957. The plaintiff, Louisiana Glazed Tile and Brick Corporation, whose name has been changed subsequent to the filing of suit to Cockerham Materials Corporation, had not been paid for some 9,500 St. Joseph brick used in the construction of the home and, therefore, filed this suit against the contractor, the owner and his wife, Catherine Cole Petty, and the bondsman of the contractor, The Great American Indemnity Company, for $508.82, cost of the brick used in the owner’s home.
By way of answer the contractor and his bondsman alleged that they were not liable for the price of the brick under the terms of the release, supra, entered in between them and the owner on July 1, 1957, and allege that should judgment be rendered against the contractor and his bondsman, they were entitled to a judgment against the owner.
After trial judgment was rendered against the contractor and his bondsman for the cost of the brick and the demand of the said party plaintiff, the contractor and his bondsman were rejected against the owner. All parties agree that the judgment in favor of the plaintiff as rendered was *49 correct but from that portion rejecting the demands of the third-party plaintiff an appeal has been taken to this court. The lower court based its judgment against the contractor and the bondsman for the purchase price of the brick upon the main ground that they had failed to bear the burden of proof as required by law. This judgment was rendered prior to the filing of the transcript.
The record reveals that under the original contract the owner was to pay the contractor the sum of $36,880 to build the house and when the disagreement arose the contractor and owner decided it was best to end their relationship and it then became necessary to pay the contractor for what he had done under the contract. The owner, prior to the execution of the contract, sought and obtained another contractor who agreed to complete the building for $33,490. In view of the fact that the owner’s idea was not to pay any more than he had originally agreed to pay the contractor, A. G. Miley, negotiations were begun by him with Miley to settle with him for the difference, or $3,390. The contractor had submitted an itemized list of expenditures to date, on May 16, 1957, which included the charge for the brick of $585.15. It is admitted that the contractor was charging a slight profit and that the true price of the brick was as sued for by plaintiff. The total of this list of expenditures submitted by the contractor to the owner was $5,591.28. On this list is shown mill work in the amount of $1,166.-16 which the testimony shows had not been installed although ordered, and also the brick of $585.15 and “wolmanized 2*4s plates” in the amount of $55.80. The testimony shows that the $1,166.16 and the $55.80 were deducted to the knowledge of the owner, however, the latter disputes the fact that the brick were not to be an obligation of the contractor. Although they had been delivered to the site they had never been used actually in the construction of the house at the time of the proposed settlement and release. On the document of May 16, 1957, was the deduction of the $1,166.16 and the $55.80 in pencil notation[1] and also of $585.14 which left a balance of $3,784.18, and the contractor testified that although this left a difference of $394.18 in which the owner wished to pay, viz., the sum of $3,390, that in order to settle it he accepted the latter sum, in full settlement.
There has been introduced by the owner a document dated June 18, 1957 which states at the top: “Status of work” to establish just what had been done and completed by the contractor, and on this list it shows five items that are not disputed but the sixth item states, “Delivered approximately 9,500 St. Joe brick dark range to the building site.” This document is signed by the contractor and the owner. It is the contention of the owner that under this document the bricks had been delivered and furnished by the contractor and were his obligation even though the document, which speaks for itself and which was clearly to show the status of the work, only shows that these brick had been delivered to the site. The full and final agreement of mutual release between the contractor, owner and bondsman of the contractor was entered into on July 1, 1957, and the material portion heretofore quoted. All the negotiations evidenced by the two documents submitted by the parties in their negotiation of a settlement of their dispute, one being the itemized list of expenditures to date submitted on May 16, 1957, by the contractor to the owner and the “Status of Work” as of June 18, 1957, became obsolete other than as evidence of the true settlement provided the document of July 1, 1957, was ambiguous. The document is not ambiguous but clear in every detail. The contractor warranted “that all materials used or work done and completed under said contract had been fully paid for, * * * ”, It is agreed that the brick had *50 not been used but were merely sitting on the building site, therefore, under the clear wording of the contract of release, not having been used or a part of the work done and completed on the building, they still remained the liability of the owner as between the contractor, Miley, and the owner, Petty. (Emphasis added.)
We are convinced from the evidence and the documents introduced that the responsibility for payment to the plaintiff for these bricks rests upon the owner and, therefore, in that respect the judgment of the lower court was obviously erroneous.
It is, therefore, ordered that the judgment in favor of the plaintiff and against the contractor and his bondsman be affirmed, but that the rejection of the contractor and the bondsman’s claim against the owner be reversed and it is now ordered, adjudged and decreed that there be judgment in favor of A. G. Miley and The Great American Indemnity Company against William L. Petty and Catherine Cole Petty, for the full sum of $508.82, together with interest at the rate of 6% per annum from June 10, 1957, until paid and for all costs of these proceedings.
Judgment affirmed in part and reversed in part.

. The pencil notation was admittedly never seen by the owner, but was just the basis by which the contractor figured (during a telephone conversation with the owner) that he would accept the sum of $3,390.